UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ZAKYYAH M. McNEIL, | : Case No. 3:20-cv-46 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

**I.     Introduction**

Plaintiff Zakyyah M. McNeil brings this case challenging the Social Security Administration's most recent denial of her applications for disability benefits. This is her second case before this Court concerning the Administration's denial of her application.

In August 2011, Plaintiff filed an application for Supplemental Security Income that was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Paul Armstrong concluded she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's request for review, and remanded the case to the ALJ. On remand, Plaintiff received a hearing before ALJ Gregory Kenyon. He too concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied her request for review.

Plaintiff subsequently filed an action before this Court, resulting in an Order vacating the Commissioner's non-disability finding and remanding the case for further administrative proceedings. Plaintiff's claim returned to ALJ Kenyon. After yet another hearing, ALJ Kenyon determined that Plaintiff was not eligible for benefits as she was not under a "disability" as defined in the Social Security Act. She then filed this action and now seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. No. 11), the Commissioner's Memorandum in Opposition (Doc. No. 14), Plaintiff's Reply (Doc. No. 15) and the administrative record (Doc. No. 10).

**II.     Background**

Plaintiff asserts that she has been under a disability since February 1, 2008. At the time her application was filed, she was twenty years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a limited education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 10-11, Page ID 961-75), Plaintiff's Statement of Errors (Doc. No. 11), the Commissioner's Memorandum in Opposition (Doc. No. 14), and Plaintiff's Reply (Doc. No. 15). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

**III.** **Standard of Review**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 1382c(a)(3)(A)-(B); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less

than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since the application date, August 10, 2011.

Step 2: She has the severe impairments of diabetes mellitus with an associated diabetic foot infection affecting the left great toe; lumbar spine strain; history of cataract in the left eye; history of DVT; obesity; borderline intellectual functioning; depressive disorder; and anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

4

| | |
|---|---|
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments between the alleged disability onset date, and April 1, 2014, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work…subject to the following limitations: (1) frequent crawling, crouching, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes or scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no jobs which would require reading less than 10-point type; (6) limited to performing jobs which would require only monocular vision and which would not require good visual depth perception; (7) limited to performing unskilled, simple, repetitive tasks; (8) occasional contact with coworkers and supervisors; (9) no public contact; (10) no fast paced production work or jobs involving strict production quotas; and (11) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next." |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments as of April 1, 2014, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work…subject to the following limitations: (1) frequent crawling, crouching, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders ropes or scaffolds, (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with coworkers and supervisors; (6) no public contact; (7) no fast paced production work or jobs involving strict production quotas; and (8) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next." |
| Step 4: | Plaintiff has no past relevant work. |
| Step 5: | Plaintiff could perform a significant number of jobs that exist in the national economy. |

(Doc. No. 10-11, PageID 963-74). Based on these findings, the Administrative Law Judge concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 975.

5

## V.     Discussion

Plaintiff challenges the evaluation of the severity of her symptoms as related to her diabetes mellitus. She argues that contrary to the remand order in this case, her symptom severity was again erroneously discounted for "less than full treatment compliance."

In years past, an assessment of symptom severity would have delved into the murky realms of credibility. *E.g., Rogers*, 486 F.3d 246-49; *cf. Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("The administrative law judge must … evaluate the applicant's credibility with great care. His responsibility is all the greater because determinations of credibility are fraught with uncertainty…." (citation omitted)). More recently, and in the time since this case was previously before the Court, the Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character…." Soc. Sec. R. 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017) (effective March 28, 2016). However, "existing case law controls to the extent that it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification." *Jordan-Smith v. Comm'r of Soc. Sec.*, No. 2:18-cv-286, 2019 WL 409363, *4 (S.D. Ohio Feb. 1, 2019) (Vascura, M.J), report and recommendation adopted, 2019 WL 2414677, *1 (S.D. Ohio June 7, 2019) (Algenon, D.J.).

The Social Security Administration uses a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's

6

symptoms limit her ability to perform work-related activities. *Id.* at *4. To do this, the ALJ must examine the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record. *Id.* at *4-5.

Indeed, the decision to remand the previous case centered on Plaintiff's compliance with prescribed treatment for diabetes. In relevant part, this Court explained:

> [I]t is evident that, in finding Plaintiff not entirely credible, the ALJ relied significantly on Plaintiff's failure to follow treatment recommendations and consistently take medication to control her diabetes. See PageID 77-74. Certainly, "medical record[s] demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms[.]" SSR 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996). However, an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Id.* Where noncompliance is shown in the record, an ALJ must not, however, draw negative inferences from such noncompliance "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* at *8
>
> The evidence of record here suggests that Plaintiff's poor compliance with treatment recommendations may have less to do with the severity of her symptoms, and more to do with her borderline intellectual functioning. Such a concern is specifically noted in Plaintiff's medical records, wherein medical professional expressed concern that Plaintiff's "poor insight" and a lack of "judgment" resulted in her noncompliance. PageID 645, 812. There is also evidence that Plaintiff's failure to timely refill prescription medication was the result of financial concerns. PageID 645. The ALJ did not specifically consider these reasons when minimizing Plaintiff's credibility. The ALJ's failure in this regard is error and, because Plaintiff's noncompliance factored significantly in the ALJ's decision, such error is not harmless.

*McNeil v. Comm'r of Soc. Sec.*, No. 3:16-cv-162, 2017 WL 3301573, *6 (S.D. Ohio Aug. 3, 2017) (Newman, M.J.), report and recommendation adopted, 2017 WL 4349064 (S.D. Ohio Sept. 29, 2017) (Rose, D.J); (Doc. No. 10-12, PageID 1024-25).

In the present case, Plaintiff's statements about the intensity, persistence, and limiting effects of her diabetes symptoms were found to be inconsistent with the record which reflected "a history of poorly controlled diabetes mellitus, requiring insulin." (Doc. No. 10-11, PageID 970). And, once again, her non-compliance with prescribed treatment was a factor. *Id.* at 970-71, 973. Unlike the previous case, the ALJ did consider borderline intellectual functioning as a possible reason for lack of treatment compliance:

> [T]he District Court remanded this case for further consideration of the claimant's poor diabetic treatment compliance and cited the claimant's borderline intellectual functioning as one possible reason for her lack of treatment compliance. However, the claimant has at times been able to maintain better adherence to her diabetes management regimen with corresponding better blood glucose control. Her diabetes has in fact been under better control since starting insulin (e.g., 27F, p. 1). The undersigned asked the claimant about her diabetes management. She testified that she has had diabetes mellitus since age eight and that she is able to administer her insulin injections independently. She did not cite any reasons at the hearing for her less than full treatment compliance. Records indicate she has been counseled repeatedly on how to manage her disease through appropriate blood sugar testing, consistent insulin use, diet, and weight loss, and nothing indicates that she did not understand the directions given. On the contrary, at one encounter she declined diabetic diet education from a registered dietician, citing her previous awareness (29F, pp. 100-101).

(Doc. No. 10-11, PageID 971). However, upon careful review, the undersigned finds that this assessment is not supported by substantial evidence and does not resolve the errors that gave rise to remand in the previous case.

8

As an initial matter, substantial evidence does not support the determination that Plaintiff's diabetes has "been under better control since starting insulin." *Id.* at 971. To support this conclusion, the ALJ cites to a single treatment record from April 2014 that reflects Plaintiff's blood sugar was 142. (Doc. No. 10-8, PageID 938). However, it is entirely unclear to this Court how a single reading reflects better control of Plaintiff's diabetes especially considering that there is no indication Plaintiff's medical provider found this to indicate her blood sugar was under better control. Plaintiff's insulin use also began long before this point in time, which undermines the conclusion that there has been better control "since starting insulin." (Doc. No. 10-7, PageID 425). And the ALJ directly contradicts this statement later in his decision when he states that "[m]ore recent records indicate that the claimant continues to present with elevated blood sugar readings which are attributed to her non-compliance with prescribed treatment." (Doc. No. 10-11, PageID 973). Likewise, the uncontrolled nature of Plaintiff's diabetes has caused several other medical issues including diabetic ocular status and diabetic foot ulcers. *Id.*

In addition, substantial evidence does not support the conclusion that Plaintiff truly understands how to manage her diabetes. Indeed, Plaintiff was "counseled repeatedly on how to manage her disease through appropriate blood sugar testing, consistent insulin use, diet, and weight loss…" *Id.* at 971. This *repeated* counseling spanned several years. It would seem that if she truly understood the directions given, as the ALJ suggests, then she would not have required continuous and repeated counseling. Importantly, as this Court previously emphasized, Plaintiff's medical providers expressed concerns about Plaintiff's insight and judgment directly in relation to her ability to adhere to prescribed treatment. In

9

August 2012, a psychology treatment provider indicated that "while [Plaintiff] verbalizes willingness to take medication, she lacks insight and judgment as evidenced by poor generalization of discussed treatment." (Doc. No. 10-8, PageID 707).  A year later, another provider indicated that she "was instructed regarding importance of good blood sugar control," but that "patient has poor insight and I fear that she'll continue to have issues with noncompliance." *Id.* at 805.  He classified her prognosis as "very guarded." *Id.*

These concerns were completely ignored by the ALJ in assessing Plaintiff's borderline intellectual functioning as a possible reason for non-compliance.  This is notable given that this Court previously cited to these specific instances in finding that remand was appropriate on these grounds.  In its response, the Commissioner attempts to overcome this prominent deficiency by arguing that other treatment records reflect normal judgment.  However, this does not negate the ALJ's failure to even address Plaintiff's insight and judgment as to her prescribed treatment, and the specific instances discussed above.  Further, the Commissioner's post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning provider's concerns about Plaintiff's insight and judgment about treatment.  *See Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).

Relatedly, the ALJ also relies on one instance when Plaintiff declined education presumably to demonstrate that she understood her treatment and did not require further education.  However, while it may be true that she declined education from a registered dietician on one occasion, the ALJ completely failed to acknowledge that Plaintiff had already received diabetes education earlier that same day.  In fact, her provider wrote that he "[e]ducated patient extensively on the importance of maintaining glucose control and

10

recommended diet and exercise modifications to aid in her treatment." (Doc. No. 10-16, PageID 1391). Likewise, while she declined additional education from the registered dietician, she nevertheless accepted handouts from her that included information on a variety of topics such as portion sizes, low blood sugar, carbohydrate and blood sugar control, high blood sugars, alcohol and diabetes, guidelines for sick day, carbohydrate counting for people with diabetes, label reading, and A1c. *Id.* at 1395. Plaintiff also received additional education the following day. *Id.* at 1410-12. This isolated occurrence does little to support the ALJ's conclusion that Plaintiff understood her treatment.

It also seems relevant to note that her ability to complete simple tasks may have a connection to her ability to comply with prescribed treatment. State agency reviewing psychologist, Dr. Tonnie Hoyle, and consultative psychologist, Dr. Gordon Harris, both identified deficiencies in this area. Dr. Hoyle indicated that Plaintiff's "borderline IQ limits her ability to do more than simple 1-3 step tasks." (Doc. No. 10-3, PageID 149). Likewise, Dr. Harris determined that Plaintiff's "ability to perform some simple tasks, as well as multi-step tasks, appears to be limited." (Doc. No. 10-7, PageID 611). Treatment records reflect that managing daily blood glucose levels is a multi-step process that must be completed several times per day. Before administering insulin, Plaintiff would need to test her blood sugar levels and then calculate the amount of insulin she requires based on that reading as well as the types and quantities of food she planned to consume at meals. (Doc. No. 10-16, PageID 1411). As her provider explained, without testing her blood sugar more often, she would not know how much insulin she would need to take with each meal. *Id.* Plaintiff needed reminded of this important fact as recently as August 2018. *Id.*

11

Nevertheless, her borderline intellectual functioning was not the only reason for non-compliance that was brought to light by this Court. Indeed, two separate reasons—intellectual borderline functioning and financial concerns—were discussed, and this Court determined that the ALJ did not "specifically consider these reasons when minimizing Plaintiff's credibility." *McNeil*, 2017 WL 3301573, *6. His failure to do so amounted to reversible error. *Id.* So too here. Contrary to this Court's previous findings, the present non-disability decision subject to review is completely devoid of any consideration, or mention, of Plaintiff's financial situation, and its effect on Plaintiff's compliance.

Plaintiff's financial situation and the impact that her situation had on her ability to follow prescribed treatment is noted several times in the record. In April 2011, the record reflects that Plaintiff needed to "get on indigent Rx program" and that she needed "indigent assistance for meds." (Doc. No. 10-7, PageID 690-91). In July 2012, Plaintiff was not able to timely refill her medication for financial reasons. *Id.* at 641. As a result, her doctor provided a one-month supply of medication samples. *Id.* Two months later, Plaintiff reported to psychology that "financial reasons [were] part of reason she has not filled her newer prescriptions." *Id.* at 707. The record reflects that psychology contacted the treating doctor about the issue, and indicated that Plaintiff would work with treating doctor "to continue to problem-solve solutions for financial burden." *Id.* Financial concerns were cited again in July 2014 when Plaintiff indicated to her doctor that she was unable to afford test strips to check her blood sugar levels. (Doc. No. 10-8, PageID 857-59). Accordingly, her doctor ordered supplies and refilled her medications at the time of the visit. *Id.*

The failure to discuss her financial concerns in assessing the severity of Plaintiff's symptoms as to her diabetes mellitus was in error. *See* Soc. Sec. R. 16-3p, 2016 WL 1119029, at *8 (An ALJ cannot "find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record" based on a plaintiff's non-compliance "without considering possible reasons" for the non-compliance). Attempts by the Commissioner to downplay these financial concerns as "very isolated occasions" does not resolve the ALJ's failure to discuss this issue on remand despite the Court identifying financial concerns as a possible reason for non-compliance.

In addition, the Commissioner's emphasis on Plaintiff's failure to provide reasons for non-compliance at the hearing is misplaced. (Doc. No. 14, PageID 1482-83, 1486). It may be true that Plaintiff "did not cite any reasons at the hearing for her less than full treatment compliance" as noted by the ALJ. (Doc. No. 10-11, PageID 971). However, this is misleading because the ALJ never attempted to address the issue of non-compliance at the hearing. Despite this being a primary issue on remand, the ALJ did not make any effort to solicit information about this issue. In fact, the discussion of her diabetes treatment was limited to the following exchange:

> Q: As we discussed at the prior hearing, I know you have diabetes, right?
> A: Yes.
> Q: And I was a little unclear. Is this Type 1 diabetes?
> A: No.
> Q: No, it's Type 2, okay. And how long have you had it, ma'am?
> A: Since I was 8.
> Q: Since you were 8, okay. And I know you're taking insulin for it, right?
> A: Yes.
> Q: And is this injections of insulin?
> A: Yes.
> Q: Now, are you able to do that? Are you able to take your own insulin?

13

    A: Yes. I've also showed my brother how to give it to me.

(Doc. No. 10-11, PageID 994-95). There were other questions related to Plaintiff's concentration and math abilities. *Id.* at 992-93. But none of these exchanges involved any direct questioning related to the issue of compliance with prescribed treatment.

 Therefore, although the ALJ attempted to consider one of the reasons for non-compliance in assessing the severity of Plaintiff's symptoms, this assessment is not supported by substantial evidence. Likewise, there was no consideration of Plaintiff's financial situation. *See Miller v. Colvin*, No. 3:15-CV-153, 2016 WL 6584509, at *2 (S.D. Ohio, April 5, 2016) (Ovington, M.J.) ("To the extent the ALJ failed to comply with the Court's instruction on remand, it was further error because Social Security ALJs are not free to ignore Judicial Orders..."). Thus, Plaintiff's Statement of Errors is well-taken.

## VI. Remand

 A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is vacated; and

2. No finding be made as to whether Zakyyah M. McNeil was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent

15

        with this Decision and Entry; and

4.      The case is terminated on the Court's docket.

<u>August 31, 2021</u>                                                <u>*s/Sharon L. Ovington*</u>
                                                                                  Sharon L. Ovington
                                                                                  United States Magistrate Judge